UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Tracy Westcott,          \*

               \*

      Plaintiff,      \*

               \*

v.                \*        COMPLAINT

               \*        Jury trial requested

Gigunda Group, Inc.    \*

and Ryan FitzSimons,   \*

               \*

      Defendants.   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW COMES the plaintiff Tracy Westcott, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

## I.    **Parties**

1.    The plaintiff Tracy Westcott is a former employee of the defendant and resides at 1 Checkerberry Lane, Londonderry, New Hampshire 03053.

2.    The defendant Gigunda Group, Inc. is a domestic corporation registered to do business in the State of New Hampshire with a principal place of business located at 139 Flightline Road, Portsmouth, New Hampshire 03801.

3.    The defendant Ryan FitzSimons resides at 2290 Ocean Boulevard, Rye, New Hampshire 03870.

## II.    **Jurisdiction and Venue**

4.    Jurisdiction over the plaintiff's Title VII claims is proper pursuant to 28 U.S.C. §1331.  The Court also has jurisdiction over the plaintiff's Fair Labor Standards Act claim pursuant to the provisions of 29 U.S.C. §216(b).  The Court may exercise pendent jurisdiction over the plaintiff's State law claims.

1

5.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to Ms. Westcott's claims occurred in New Hampshire.

**III.     <u>Facts</u>**

6.     Ms. Westcott began employment as an Executive Assistant for Gigunda Group, Inc. ("Gigunda") on or about June 1, 2013.  She reported to Ryan FitzSimons, the owner of the company.  Her job duties included assisting Gigunda employees and serving as Mr. FitzSimons' personal assistant.  She had previously worked for Gigunda in a similar capacity between approximately October of 2010 and November of 2011.

7.     Between June 1, 2013, and August 1, 2014, Ms. Westcott generally worked 55 hours per week.

8.     From August 1, 2014, until March of 2015, Ms. Westcott generally worked 65 hours a week.

9.     Mr. FitzSimons treated Ms. Westcott well, and gave all indications of being pleased with her performance, until she disclosed her pregnancy in February of 2015.  She started her employment in June of 2013 at an annual salary of $50,000.00.  She received a raise to a $55,000.00 annual salary in or around December of 2013.  In or around June of 2014, she received another raise to an annual salary to $60,000.00.  She received a $5,000.00 bonus in or around December of 2014.

10.     Ms. Westcott learned that she was pregnant on or about January 19, 2015.  After she was involved in a car accident on or about January 31, 2015, she disclosed her pregnancy to Gigunda's Human Resources department.

11.     Ms. Westcott had to visit the emergency room because of bleeding on or about February 16, 2015.  She learned that she had a blood clot on the placenta, and that if the blood clot separated from the placenta, she faced a danger of miscarriage.

12.     The plaintiff advised Mr. FitzSimons of her pregnancy and the associated complications on or about February 17, 2015.  She informed him that her doctor had advised her that she would need to stay home and elevate her feet if bleeding resumed.

13.     Mr. FitzSimons was visibly displeased by the news of Ms. Westcott's pregnancy. He commented that he thought she would need to apply for short-term disability and that she would be unavailable to him until after the baby was born.  Ms. Westcott explained to Mr. FitzSimons that she would only be limited if she were bleeding.

14.     Mr. FitzSimons' behavior towards Ms. Westcott in the workplace suddenly changed.  He started accusing her of lying and scoffed at her comments, calling them "bullsh*t." He interrupted her, yelled at her and demeaned her.

15.     In or around April of 2015, Ms. Westcott's doctors limited the extent to which she could work, requiring her to work from home three (3) days out of the 5-day workweek.  The doctors also limited her to a 40-hour workweek.

16.     The plaintiff reported for work on or about Tuesday, April 14, 2015.  She had been working from home the prior Friday and Monday.  Mr. FitzSimons summoned her to a meeting in the Human Resources department.  In the meeting, Mr. Fitzsimons told her that he had come to a decision that he had to let her go because he purportedly no longer trusted her.

17.     Incredibly, despite the fact that the respondent was terminating Ms. Westcott for a supposed lack of trust, Mr. FitzSimons wanted her to continue working there for a period of time.  Mr. FitzSimons proposed two (2) different schemes.  First, he said that he would pay Ms.

3

Westcott $20,000.00 to continue working through June 15, 2015, and that he would continue her insurance benefits for the remainder of the year.  Later on the same day that he proposed this arrangement, he reneged on his proposal and instead proposed that she work at her regular rate of pay until May 8, 2015, at which time he envisioned placing her on short-term disability.  He asked her to collude with her doctors to obtain a restriction from employment effective May 8, 2015.  Ms. Westcott told Mr. FitzSimons that she would not participate in the perpetration of a fraud.

18.     Ms. Westcott last worked for Gigunda on or about April 20, 2015.

19.     Ms. Westcott timely filed a Charge of Discrimination dated June 16, 2015, with both the New Hampshire Commission for Human Rights and the United States Equal Employment Opportunity Commission (EEOC).  Exhibit A.  After the Charge had been pending before the administrative agencies for the required 180 days, Ms. Westcott gave notice to the administrative agencies of her intent to bring a civil action, and she requested a Notice of Right to Sue from the EEOC.  Ms. Westcott received her Notice of Right to Sue on or about February 1, 2016, and she files this civil action within 90 days of receipt of such Notice, as required.  Exhibit B.

## COUNT I

### (Violation of Fair Labor Standards Act, 29 U.S.C. §207 Against All Defendants)

20.     The allegations of the preceding paragraphs are incorporated herein by reference.

21.     For all periods of her employment, Ms. Westcott was entitled to the protections of the Fair Labor Standards Act (FLSA) under both individual coverage and enterprise coverage.  Ms. Westcott was individually covered under the FLSA because, for all periods of her employment, she regularly and recurrently used the instrumentalities of interstate commerce in

her work, regularly and recurrently making and receiving interstate telephone calls, and regularly and recurrently sending and receiving interstate mail.  Ms. Westcott was also covered under the FLSA under the principle of enterprise coverage, because for all periods of Ms. Westcott's employment the defendant had a gross annual volume of business done in excess of $500,000.00 and the defendant engaged in interstate commerce.

22.    Ms. Westcott was at no time exempt from the overtime pay provisions of the FLSA.

23.    Ms. Westcott generally worked at least 55 hours per workweek from June 1, 2013, to August 1, 2014.  From August 1, 2014, until March of 2015 Ms. Westcott generally worked at least 65 hours per week.

24.    For purposes of Ms. Westcott's FLSA claim, her employer was not only Gigunda Group, Inc.  Mr. FitzSimons also individually qualifies as the plaintiff's employer pursuant to 29 U.S.C. §203(d).

25.    Despite the fact that Ms. Westcott was entitled to the protections of the FLSA, and despite the fact that she was never exempt from the FLSA's overtime pay provisions, the defendant failed and refused to pay Ms. Westcott overtime compensation owing her, failing to pay Ms. Westcott at a rate one-and-one-half times her regular rate for hours she worked in workweeks in excess of 40, in violation of 29 U.S.C. §207(a).

26.    The defendant's FLSA violations were willful.

27.    The defendant cannot show that it failed to pay Ms. Westcott overtime compensation in good faith, nor can the defendant demonstrate any reasonable grounds for believing that it was somehow entitled to avoid paying overtime compensation to an employee whose job duties were those of a personal assistant.

28.     The defendant's FLSA violations entitle Ms. Westcott to the unpaid overtime compensation owing her, plus liquidated damages, reasonable attorney's fees, and interest and costs.

## COUNT II

### (Violation of Title VII (Pregnancy Discrimination Act) Against the Defendant Gigunda Group, Inc.)

29.     The allegations of the preceding paragraphs are incorporated herein by reference.

30.     Ms. Westcott was pregnant at the time of her termination.

31.     Ms. Westcott was qualified for the position she held with the defendant.

32.     Ms. Westcott suffered an adverse employment action, specifically the April 14, 2015, notice of the termination of her employment.

33.     Ms. Westcott's pregnancy was a motivating factor in the defendant's decision to fire her, as reflected by such things as Mr. FitzSimons' comments upon learning of her pregnancy that she would need to apply for short-term disability and that she would be unavailable to him until after the baby was born.  Mr. FitzSimons' hostile behavior towards Ms. Westcott in the workplace following her disclosure of her pregnancy further revealed his discriminatory animus that culminated in the termination decision.

34.     As a direct and proximate result of the defendant's violations of the Pregnancy Discrimination Act, Ms. Westcott has suffered and continues to suffer damages, including but not limited to back pay, front pay, lost benefits of employment, emotional distress, humiliation, inconvenience, and loss of enjoyment of life, plus attorney's fees, interest and costs.  Ms. Westcott is further entitled to punitive damages because the defendant's act of firing her with her pregnancy as a motivating factor for the termination decision was done with malice and with reckless disregard for Ms. Westcott's federally protected rights.

## COUNT III

### (Violation of RSA 354-A:7, VI Against the Defendant Gigunda Group, Inc.)

35.     The allegations of the preceding paragraphs are incorporated herein by reference.

36.     Ms. Westcott was pregnant at the time of her termination.

37.     Ms. Westcott was qualified for the position she held with the defendant.

38.     Ms. Westcott suffered an adverse employment action, specifically the April 14, 2015, notice of the termination of her employment.

39.     Ms. Westcott's pregnancy was a motivating factor in the defendant's decision to fire her, as reflected by such things as Mr. FitzSimons' comments upon learning of her pregnancy that she would need to apply for short-term disability and that she would be unavailable to him until after the baby was born.  Mr. FitzSimons' hostile behavior towards Ms. Westcott in the workplace following her disclosure of her pregnancy further revealed his discriminatory animus that culminated in the termination decision.

40.     As a direct and proximate result of the defendant's violations of RSA 354-A:7, Ms. Westcott has suffered and continues to suffer damages, including but not limited to back pay, front pay, lost benefits of employment, emotional distress, humiliation, inconvenience, and loss of enjoyment of life, plus attorney's fees, interest and costs.  Ms. Westcott is further entitled to enhanced compensatory damages based on the defendant's actions reflecting willful or reckless disregard of her rights under RSA 354-A.

WHEREFORE, the plaintiff Tracy Westcott respectfully prays this Honorable Court:

A.      Schedule this matter for trial by jury, and after trial;

B.      Find the defendant liable for violation of the overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. §207;

C.      Award the plaintiff her unpaid overtime compensation, liquidated damages, and attorney's fees;

D.      Find that the defendant violated Ms. Westcott's rights under the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k);

E.      Find that the defendant violated Ms. Westcott's rights under RSA 354-A:7;

F.      Award Ms. Westcott damages for back pay, front pay, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life;

G.      Award Ms. Westcott punitive damages based on her claims for violation of the Pregnancy Discrimination Act;

H.      Award Ms. Westcott enhanced compensatory damages based on her claims for violation of RSA 354-A;

I.      Award Ms. Westcott her reasonable attorney's fees;

J.      Award Ms. Westcott interest and costs; and

K.      Grant such other and further relief as is just and equitable.

> Respectfully submitted,
> TRACY WESTCOTT,
> By her attorneys,
> DOUGLAS, LEONARD & GARVEY, P.C.

Date: May 2, 2016                    By:     /s/Benjamin T. King
                                             Benjamin T. King, NH Bar #12888
                                             14 South Street, Suite 5
                                             Concord, NH 03301
                                             (603) 224-1988
                                             benjamin@nhlawoffice.com